UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

THRESSA B. BOWEN )
)
V. ) NO. 2:10-CV-175
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's claim for supplemental security income was denied following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 15 years of age at the time she applied for benefits on April 17, 2008. This is an application for benefits under the age of 18 governed by 20 C.F.R. § 416.924, *et seq.*

Plaintiff alleges that she is disabled due to a severe mental impairment, mental retardation. Her history in this regard is set forth in her brief as follows:

> A kindergarten progress report for the 1998 to 1999 school year notes Plaintiff was promoted to the first grade, but needed extra help to make progress in her work skills (Tr. 177-180).
> During the 2000 to 2001 school year, while a student in the first grade, it was noted that Plaintiff's behavior hampered her learning; she had trouble listening; she struggled in both reading and math; her comprehension skills were weak; and she was careless in math (Tr. 181-182).
> On April 2, 2008, an annual Individual Education Program was prepared for Plaintiff by the Washington County Schools. Plaintiff was noted to require assistance from resource education in Spelling/Language Arts, Math, and Reading; to receive modifications in the general curriculum for Science and Social Studies; and to receive both state allowable and special accommodations on the Gateway Testing (Tr. 187-202).
> Plaintiff underwent consultative exam by Dr. Steven Lawhon on August 20, 2008. Plaintiff was noted to have headaches; to have had seizures in the past; to have suffered a 20-pound weight loss in recent months; and to have some learning problems. Plaintiff's mother described her as being somewhat moody at times, as being slow, and as having learning problems. Plaintiff did not complete serial sevens or proverbs; she recalled two out of three objects, suggesting mild impairment in short-term memory; she was unable to discuss current events; and her intellectual functioning was estimated to be below average. WISC-IV testing yielded a Verbal IQ score of 57, a perceptual Reasoning index of 73, a Working Memory index of 71, and a Processing Speed Index of 85, resulting in a Full Scale IQ score of 64. WRAT testing revealed a 5.5 grade equivalent in Word Reading, a 3.4 grade equivalent in Sentence Comprehension, a 7.3 grade equivalent in Spelling, and a 3.2 grade equivalent in Math Computation. The diagnosis was mild mental retardation, with a global assessment of functioning (GAF) of 55. Dr. Lawhon opined Plaintiff's ability to understand and remember is moderately

limited; her ability to sustain concentration and persistence is moderately limited; her social interaction is mildly to moderately limited; and her age appropriate adaptation is significantly limited (Tr. 208-212).

On September 9, 2008, a reviewing state agency psychologist opined Plaintiff has a marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; less than marked limitation in caring for herself; and no limitation in health and physical well-being (Tr. 213-218).

Plaintiff's first six weeks report card for the 2008 to 2009 school year reflects poor grades and special education classes. Plaintiff was noted to have poor attendance; to fail to turn in work; to display a lack of effort; to show a lack of minimum skill proficiency; and to have a hard time remembering things and focusing (Tr. 219-221).

On December 1 2008, a reviewing state agency psychologist opined Plaintiff has a marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; less than marked limitation in caring for herself; and no limitation in health and physical well-being (Tr. 222-227).

On March 3, 2004, Plaintiff underwent psychological evaluation by D. Michael Jones, School Psychologist. Plaintiff was referred for evaluation due to classroom struggles in all academic areas. Plaintiff was noted to have low grades; to be failing many academic courses; to have problems with off task behavior; to have poor reading comprehension; and to have failed all third grade SOL tests. Plaintiff was quiet and did not volunteer information without prompting; she relayed her distain of school, due to difficulties with school assignments; she appeared somewhat distracted at times by noises outside the evaluation room in the surrounding school office; some perfectionistic tendencies were noted; and she lacked self confidence and verbally expressed concerns regarding her ability to complete tasks. WISC-III testing yielded a Verbal IQ score of 71, a performance IQ score of 70, and a Full Scale IQ score of 68. WIAT-II scores showed Plaintiff to be achieving at deficient to low average levels in overall academic skills. In summary, it was noted that Plaintiff's ability levels fall within the upper limits of the mildly mentally deficient range; her adaptive levels appear to fall into impaired ranges; she exhibited some signs of organicity in her protocols, which may explain some of her overall weaknesses; she appears to derive little pleasure from most activities and appears to worry; and her struggles in school will most likely continue without proper accommodations due to low overall ability levels (Tr. 230-238).

[Doc. 11, Pgs. 2-4].

Before discussing the testimony at the administrative hearing and the ALJ's decision, the standard for evaluating childhood disability claims should be discussed. 20 C.F.R. § 416.924 sets out the sequential evaluation process, which differs significantly from its adult

3

disability counterpart. First the Commissioner must determine if the child is engaged in substantial gainful activity. If they are, they are not disabled. If the child is not engaged in substantial gainful activity, it must be determined if the child has a severe impairment. If not, the child is not disabled. If they do have a severe impairment, then the Commissioner moves on to the third and final step and determine if the child's impairment meets, "medically equals or functionally equal the listings." *Id.*, at (d).

Obviously, if the child meets the requirements of a listed impairment, he or she is disabled. However, if they do not, it must be determined if the impairment causes the condition to be medically equivalent to a listing. Medical equivalence means the child has findings "that are at least of equal medical significance to the required criteria" of a listing, under Section 416.926.

If the effects of the child's impairment do not meet the standard for medical equivalence, then the Commissioner must determine the question of functional equivalence, described in Section 416.926a. At this point, the effects of the child's impairment or impairments are gauged in six "domains." These are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for his or her self, and (6) health and physical well being. The regulations have specific requirements in each domain, except for health and physical well being, based upon the age of the child. If the child has a "marked" limitation in two or more of the six domains, or an "extreme" limitation in one of them, then the

4

"impairment(s) is of listing-level severity." *Id.*, at (d).[1]

Accordingly, what the ALJ was trying to determine was whether Ms. Bowen met a listed impairment or met the requirements for medical or functional equivalence. The listing which the plaintiff asserted she met or equaled was 112.05 on "Mental Retardation." In her particular case, the portions that she arguably meets the requirements of are C and D of this listing. C states that "the required level of severity for this disorder is met...[if Ms. Bowen has] a valid verbal, performance or full scale IQ of 59 or less." To meet D, the person must have "a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 CFR Ch. III, Pt. 404, Subpt. P, App. 1, Section 112.05.

At the administrative hearing, after listening to the plaintiff's testimony, the ALJ called Dr. Thomas E. Schacht, a clinical psychologist, as a medical advisor. Dr. Schacht noted that the plaintiff's school records showed "a very unusual cognitive profile." He pointed out her IQ scores from 2004 in her testing by the school psychologist (Tr. 231). Those indicated a full scale IQ of 68. He stated that the records indicated her academic performance was adversely affected by "general underexposure." He stated this was believed to be "cultural familial retardation" as opposed to "something kind of wired into the brain." He stated that cultural familial retardation can be rehabilitated with appropriate education. (Tr. 45).

---

[1] The definitions of "marked" and "extreme" are specific to the age category of the child in all domains other than health and physical well being. Their "general" definitions are of little relevance. The general definition of "marked" is "more than moderate, less than extreme." "Extreme is generally defined as "more than marked." *Id.*, at (e).

Dr. Schacht then discussed the plaintiff's academic achievement testing from the seventh grade in 2008 (187-202). He said that if one only looked at that testing "you would not predict mental retardation." He noted that "her functioning in the verbal areas was in the average range..." while her math score would suggest a learning disability in math. Her "word reading" was at the 8.5 grade level. Her score in reading and comprehension was on grade level. Spelling was her lowest score in the verbal areas. (Tr. 46).

He then went on to discuss Dr. Lawhon's consultative examination (Tr. 208-11). He noted Dr. Lawhon's verbal IQ score for the plaintiff was only 57. He stated that was "hugely discrepant" from the achievement testing noted above, and that "I cannot reconcile that discrepancy." Obviously remembering the higher IQ scores from 2004 mentioned above, he stated that if there was additional IQ testing from the school done in 2007 "that might help resolve that conflict." He then stated that "if Dr. Lawhon's evaluations were accepted at face value it would meet listing 112.05C based on the verbal IQ of 57 if you accepted that despite the discrepancy." He alternatively opined that she "does not have, based on this record, evidence of an additional condition..." and that there was no evidence from Dr. Lawhon or the school records of any additional impairment. (Tr. 46-47).

Dr. Schacht was then cross examined by the plaintiff's attorney. He admitted that "if you accept the IQ of 57" found by Dr. Lawhon, she would have "an extreme impairment in acquiring and using information." He quickly pointed out that such a scenario "doesn't fit with the academic achievement" noted in the 2008 school testing. When asked if the IQ score of 57 was valid, he said "I don't know that. That's my whole point here that we have a major conflict in this record between the IQ in Dr. Lawhon's evaluation and the school

6

achievement testing." He stated that for an IQ score to show an "extreme" limitation, it would have to be in the range that would meet the listing anyway. (Tr. 48).

In his hearing decision, in accordance with the childhood sequential evaluation steps outlined above, the ALJ found that the plaintiff was not engaged in substantial gainful activity. (Tr. 14). He then addressed whether she met the requirements of any listed impairment. As to 112.5C, he found that her verbal IQ score measured by Dr. Lawhon of 57 was not accepted because "there are inconsistencies which bring issue to the validity of this score." In making this finding he relied upon the State Agency findings, the plaintiff's high academic achievement scores from her school testing, and the testimony of Dr. Schacht. However, since Dr. Lawhon's finding of a full scale IQ of 64 was not as inconsistent, and since a score of 64 would bring 112.5D to bear, he also considered that listing. He found that "the record does not support that the claimant suffered from an additional impairment which imposed an additional and significant limitation of function." Accordingly he found she did not meet the requirements of any listed impairment. (Tr. 14-15).

Medical equivalence was not addressed as it was not relevant to this case. The ALJ then discussed functional equivalence under Section 416.926a. He specifically stated that he was also following the requirements of Social Security Ruling 09-2p and evaluated the "whole child" as required therein. (Tr. 15). As previously stated, he was required to make findings regarding whether she had limitations of function in the six domains, and if she had limitations of "marked" severity in two of them, or "extreme" severity in one of them, she would have the necessary functional equivalence to be disabled. After a thorough discussion of the evidence, the ALJ made findings with respect to each domain. He found that the

7

plaintiff had a marked limitation in acquiring and using information. (Tr. 19). However, he found that she had a "less than marked" limitation in attending and completing tasks, interacting and relating with others, and in caring for herself. He found no limitation in moving about and manipulating objects and no limitation in physical health and well being. Accordingly, he found that she was not disabled. (Tr. 19-23).

Plaintiff makes two arguments. First, she asserts that the ALJ erred in not finding that she met the requirements of Listing 112.5C based upon Dr. Lawhon's verbal IQ score and Dr. Schacht's testimony. Alternatively, she argues that the ALJ erred in not finding her impairment met the requirement for functional equivalence, because her IQ score of 57 would show an "extreme" impairment in the domain of acquiring and using information, which would suffice for a finding of functional equivalence.[2]

The plaintiff's reliance on Dr. Schacht's testimony is misplaced on both counts. He never said that he agreed that the verbal IQ score of 57 was accurate. The entire point of his testimony was that the school achievement scores and the 2004 IQ scores were totally inconsistent with the low test score obtained by Dr. Lawhon. The ALJ, as the finder of fact, had substantial evidence before him from several psychological sources that would enable him to conclude that the 57 was not a valid score. That being the case, he did not err in finding that she did not meet Listing 112.05C. This is also true regarding the argument that the plaintiff met functional equivalency because that score would indicate an "extreme" degree of limitation.

---

[2]All arguments not raised in the plaintiff's brief which could have been raised are hereinafter waived.

The Court would also note that Dr. Lawhon did not have before him the 2004 report from the school psychologist. That report was not received until September 30, 2009, while Dr. Lawhon examined the plaintiff over a year earlier on August 20, 2008. It is also noted that the ALJ did not wholesale discount Lawhon's entire report, but only the verbal IQ scale. The ALJ did an exceptionally balanced and careful review of the evidence, and there is substantial evidence to support all of his findings.

Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment be DENIED, and the Motion for Summary Judgment of the defendant Commissioner be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).